**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

STEVEN WELLS and TERESA WELLS,

        Plaintiffs,

vs.

LF NOLL, INC. and DECK LAW, PLC,

        Defendants.

No. 18-CV-2079-CJW-KEM

**ORDER**

_____

**TABLE OF CONTENTS**

I.     SUMMARY JUDGMENT STANDARD ................................................. 2

II.    FACTUAL BACKGROUND ............................................................. 5

III.   PROCEDURAL HISTORY .............................................................. 10

IV.   ANALYSIS ................................................................................. 11

     A.    Debt Collector .................................................................. 11

     B.    Violation of 15 U.S.C. § 1692g(a) ................................................. 16

     C.    Violations of 15 U.S.C. § 1692e(10) ............................................ 20

          1.    Claims against Both NCS and DeckLaw ............................. 21

          2.    Claim Against DeckLaw Only ........................................ 23

     D.    Violation of 15 U.S.C. § 1692e(11) ............................................ 25

     E.    IDCPA Claims ................................................................. 25

V.     CONCLUSION ........................................................................... 26

1

This matter is before the Court on the parties' cross-motions for summary judgment. On July 19, 2019, plaintiffs moved for summary judgment. (Doc. 13). Defendants filed a timely resistance, which included a response to plaintiffs' statement of material facts and defendants' statement of additional material facts. (Doc. 14). Plaintiffs filed a timely response to defendants' statement of additional facts and a supplemental appendix but did not reply to defendants' legal arguments. (Doc. 16). Defendants also moved for summary judgment. (Doc. 15). Plaintiffs filed a timely resistance. (Doc. 17). Plaintiffs' resistance did not respond to defendants' statement of material facts as required by Local Rule 56(b), and the Court ordered plaintiffs to file a response in compliance with the Local Rules. (Doc. 19). Plaintiffs complied with the Court's order and filed a response to defendants' statement of material facts. (Doc. 20). Defendants filed a timely reply to plaintiffs' resistance. (Doc. 18). None of the parties have requested oral argument, and the Court considers this matter fully submitted. For the reasons stated below, defendants' Motion for Summary Judgment is **granted as to Counts I-III** and **denied as moot as to Counts IV-VI**. Plaintiffs' Motion for Summary Judgment is **denied as to Counts I-III** and **denied as moot as to Counts IV-VI**. **Counts IV-VI are dismissed without prejudice**.

## I. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence

or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).

A fact is "material" if it "might affect the outcome of the suit under the governing law . . .." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also*

*Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them" (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))). Although a court must view the facts in the light most favorable to the nonmoving party, it "need not 'accept unreasonable inferences or sheer speculation as fact.'" *Gilani v. Matthews*, 843 F.3d 342, 349 (8th Cir. 2016) (quoting *Reed*, 561 F.3d at 791). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). "Rather, the court's function is to determine whether a dispute about a material fact is genuine . . .." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

When considering cross motions for summary judgment a court must consider each motion separately. *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 615 (N.D. Iowa 2019). Thus, courts view the record in the light most favorable to plaintiffs when considering defendants' motion, and the court views the record in the light most favorable to defendants when considering plaintiffs' motion. *Weber v. Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 825 (D. Minn. 2011). The presentation of cross motions for summary judgment does not mandate that a court grant summary judgment in favor of one side or the other. *Hot Stuff Foods, LLC v. Houston Cas. Co.*, 771 F.3d 1071, 1076 (8th Cir. 2014). "The granting of one [cross] motion [for summary judgment] does not necessarily warrant the denial of the other motion, unless the parties base their motions on the same legal theories and same set of material facts." *Stewart v. Dollar Fed. Sav. & Loan Ass'n*, 523 F. Supp. 218, 220 (S.D. Ohio 1981); *see also We Are Am. v. Maricopa Cty. Bd. of Sup'rs*, 297 F.R.D. 373, 381 (D. Ariz. 2013).

## II.    FACTUAL BACKGROUND

The parties' motions for summary judgment are based on the same legal theories. Defendants' Motion for Summary Judgment addresses the legal theories set forth in plaintiffs' Motion for Summary Judgment. Plaintiffs' Response to Defendants' Summary Judgment Motion, in turn, largely incorporates plaintiffs' own arguments from their Motion for Summary Judgment. (Doc. 17). As set forth below, even drawing all factual inferences supported by the record in plaintiffs' favor, defendants are entitled to summary judgment on Counts I-III. Given that the parties' motions are premised on the same legal theories, granting defendants' Motion for Summary Judgment also requires that the Court deny plaintiffs' Motion for Summary Judgment. *See Stewart*, 523 F. Supp. at 220; *We Are Am.*, 297 F.R.D. at 381. The Court, thus, need not make separate findings of fact for each motion. The Court will make its findings of fact as to defendants' Motion for Summary Judgment, drawing all inferences supported by the record in plaintiffs' favor. The Court will discuss additional facts below as they become relevant to the analysis.

Defendant LF Noll, Inc. is a debt collector and does business under the name Noll Collection Service, or NCS ("NCS"). (Doc. 15-2, at 1). On September 23, 2014, NCS mailed plaintiffs a written correspondence about a debt of $2,493.42 that plaintiffs owed to the Boys and Girls Home ("debt"). (*Id.*). NCS mailed the letter to plaintiffs at PO Box 206, Marble Rock, IA. (*Id.*). The letter included the amount of the debt, and the name of the creditor. (Docs. 15-2, at 1-2; 15-3, at 11). The letter advised plaintiffs that upon written request within thirty days NCS would provide plaintiffs the name and address of the original creditor if different than the current creditor. (*Id.*). The letter also advised plaintiffs that they had thirty days to dispute the debt and that NCS would provide verification of the debt if plaintiffs disputed it. (*Id.*). The letter further informed plaintiffs that if they did not dispute the debt, the debt would be assumed to be valid. (*Id.*).

Plaintiffs entered a payment plan with NCS and began making payments on the debt. (Docs. 13-1, at 3; 15-2, at 2). Plaintiffs stopped making payments with $1,443.42 remaining on the debt ("remaining balance"). (Doc. 15-2, at 2). NCS performed a "skip trace" search to locate plaintiffs' physical address, rather than their PO box. (Doc. 15-2, at 2). NCS performed the skip trace because it believed it needed plaintiffs' current physical address to serve plaintiffs if NCS filed a small claim to collect the remaining balance. (*Id.*).[1] The skip trace stated that plaintiffs' physical address was 912 East Herold Avenue, Des Moines, Iowa. (*Id.*). NCS mailed a Notice of Right to Cure Default to the Herold Avenue address on May 1, 2017. (Docs. 15-2, at 2; 15-3, at 12). Plaintiffs never received the Notice of Right to Cure Default. (Doc. 13-1, at 3).[2] NCS did not receive payment or otherwise hear from plaintiffs for several months. (Doc. 15-2, at 2).

---

[1] Defendants state "[b]ecause Iowa requires that original notice for this type of small claim[ ] be served on a physical address, the previous PO [b]ox address was insufficient for a lawsuit to further proceed." (Doc. 15-2, at 2). In support of this statement, defendants cite the affidavit of Thomas Noll. (*Id.*, citing Doc. 15-3, at 4). Mr. Noll cannot testify about the service requirements for a small claims petition under Iowa law because such testimony is an improper legal opinion. *See S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible. Matters of law are for the trial judge. . . ." (internal citation omitted)). Mr. Noll's opinion is also incorrect. Iowa Code Section 631.4 provides that a small claims petition can be served "by certified mail, restricted delivery, return receipt to the clerk requested. . . ." There is nothing in the record to indicate that defendants could not have served plaintiffs by certified mail. The Court will not accept that defendants were required to serve plaintiffs at their physical address, but the Court will accept as true that defendants believed that they were required to serve plaintiffs at their physical address.

[2] Defendants assert that they lack sufficient knowledge to admit or deny that plaintiffs never received the Notice of Right to Cure Default. (Doc. 14-2, at 2). A party can assert lack of knowledge in an answer to a complaint. FED. R. CIV. P. 8(b)(5). At the summary judgment stage, however, a party must support the admission or denial of a fact by either citing to materials in the record, or by "showing that the materials cited do not establish the absence . . . of a genuine dispute. . . ." FED. R. CIV. P. 56(c)(1); *see also* LR 56(b) ("A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories,

After mailing the Notice of Right to Cure Default, NCS received a notice from the United States Post Office that a person named Steven Wells had moved from the Herald Avenue address to 1109 Caulder Avenue, Des Moines, Iowa. (Doc. 15-2, at 3). At all times relevant to this case, plaintiffs lived in Marble Rock, Iowa, not the Herold Avenue or Calder Avenue addresses in Des Moines, Iowa. (Docs. 13-2, at 13-14). It appears based on the record that a different individual named Steven Wells, not plaintiff Steven Wells, resided at the Herald Avenue and Calder Avenue addresses in Des Moines. After mailing the Notice of Right to Cure Default, NCS did not receive any communication or further payment from plaintiffs, so NCS retained defendant DeckLaw PLC ("DeckLaw") to file a small claims action against plaintiffs to recover the remaining balance. (*Id.*). NCS provided DeckLaw the Caulder Avenue address as the plaintiffs' address. (*Id.*).

On May 31, 2017, DeckLaw filed an Original Notice and Petition for Money Judgment ("small claims petition") in the Iowa District Court for Polk County, Case No. SCSC599389 ("small claims action") on behalf of NCS and against plaintiffs. (Doc. 15-3, at 23). The small claims petition sought damages in the amount of $1,443.42 and advised plaintiffs that "[j]udgment may include the amount requested plus interest and court costs." (*Id.*). DeckLaw also filed a Verification of Account Identification of Judgment Debtor and Certificate Re Military Service ("verification of account") as to both plaintiffs. (*Id.*, at 16-22). The verifications of account listed the Caulder Avenue

---

admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement. . . ."). Thus, defendants cannot rely on an alleged lack of knowledge to dispute that plaintiffs did not receive the Notice of Right to Cure Default, and the Court will accept as true plaintiffs' assertion that they did not receive the notice. *See Puerto Rico Am. Ins. Co. v. Burgos*, 867 F. Supp. 2d 216, 225 (D.P.R. 2011) (rejecting defendants' denials of statements of facts based on lack of knowledge and hearsay when local rules required denials to be supported by citations to the record).

address for plaintiffs. (*Id.*). Defendants assert, and plaintiffs do not dispute, that DeckLaw was not required to mail plaintiffs the verifications of account. (Docs. 15-2, at 3; 20, at 5).

Defendants were unable to serve plaintiffs at either of the Des Moines addresses because plaintiffs did not reside there. (Doc. 13-2, at 22-23). On January 10, 2018, defendants personally served plaintiffs with the small claims petition at their home address in Marble Rock, Iowa. (Doc. 15-3, at 25-26). On January 23, 2018, plaintiffs mailed a check to NCS for $1,443.42, the principle amount demanded in the small claims petition. (Docs. 1, at 4; 6, at 3). The check was noted "paid in full." (Doc. 15-2, at 4-5). On January 31, 2018, at 9:21 a.m., the Iowa District Court for Polk County entered a default judgment in favor of NCS and against plaintiffs for $1,443.42 plus interest and court costs. (Doc. 15-3, at 27). Interest and court costs on judgments are provided for by Iowa law. *See* IOWA CODE §§ 668.13, 625.1.

The parties dispute aspects of the events that occurred between January 10 and January 31, 2018. First, defendants assert that after plaintiffs were served on January 10, 2018, plaintiffs took no steps to contact NCS or DeckLaw other than mailing the check on January 23, 2018. (Doc. 15-2, at 4-5). Plaintiffs deny the allegation and state that plaintiff Steven Wells "tried to contact NCS to discuss options." (Doc. 16, at 2).[3] Plaintiffs attached a copy of their phone records in support of the denial but provide no explanation of the record's content. (Docs. 16; 16-1). Plaintiffs do not assert that they actually spoke to anyone at NCS during that time period. (*Id.*). Plaintiffs' phone records do show that plaintiffs placed a call to NCS on January 29, 2018. (*Compare* Doc. 15-3, at 11 (listing NCS's telephone number) *with* Doc. 16-1, at 2 (showing an outgoing call

---

[3] Plaintiffs did not respond to defendants' statement of fact in support of defendants' Motion for Summary Judgment (Docs. 15-2, at 4-5; 20, at 7), but responded to an identical statement of fact asserted by defendants in response to plaintiffs' Motion for Summary Judgment. (Docs. 14-3, at 2; 16, at 2).

to NCS's number on January 29, 2018)). The Court finds that plaintiffs attempted to contact NCS on January 29, 2018. Without resorting to speculation, however, the Court cannot find that plaintiffs spoke to anyone at NCS or otherwise conveyed to NCS that plaintiffs mailed a check for the remaining balance on January 23, 2019.

Second, defendants state that NCS received plaintiffs' check on January 31, 2018, after the court entered the default judgment in the small claims action. (Doc. 15-2, at 5). Plaintiffs deny that NCS received the check after the default judgment, but in support only state that plaintiffs sent the check on January 23, 2018. (Doc. 20, at 8). Even drawing all inferences in plaintiffs' favor, plaintiffs' allegation that they mailed the check on January 23, 2018, does not create a genuine dispute as to when NCS received the check. Thus, the Court finds that plaintiffs mailed the check on January 23, 2018, and NCS received it on January 31, 2018, after the Polk County District Court entered the default judgment in the small claims action.

Third, the parties dispute aspects of the communication about NCS's rejection of plaintiffs' check. NCS did not accept the payment of $1,443.42[4] because plaintiffs' check noted that it was payment in full, but the default judgment included court costs and interest in addition to the $1,443.42 owed on the remaining balance. (Doc. 15-3, at 5, 27). On January 31, 2018, Thomas Noll, the manager of NCS, spoke to Mr. Wells over the phone. (Docs. 15-3, at 5; 16-1, at 3). Mr. Noll told Mr. Wells that he would waive the interest on the default judgment if plaintiffs would pay the court costs imposed by the judgment. (Doc. 15-3). Plaintiffs attempt to dispute Mr. Noll's account of the January 31, 2018 conversation, but in support only state, without reference to the record, that "[Mr.] Wells does not remember the conversation this way." (Doc. 20, at 8). This

---

[4] In the Affidavit of Thomas Noll (Doc. 15-3, at 5) Mr. Noll refers to the outstanding balance as $1,443.41. In all other documents, the outstanding balance is $1,443.42. The Court believes this is a typographical error and will refer to the outstanding balance as $1,443.42 throughout this Order.

statement, without citation to the record, is insufficient to create a genuine issue of material fact. *See* FED. R. CIV. P. 56(c)(1); LR 56(b). Plaintiffs' affidavit states that NCS "rejected [the check] for not having court costs attached," (Doc. 13-2, at 14) which is consistent with Mr. Noll's description of the conversation. Even drawing all factual inferences in plaintiffs' favor, the Court finds that the January 31, 2018 telephone conversation occurred as set forth in Mr. Noll's affidavit.

DeckLaw, on behalf of NCS, requested and received a General Execution in the amount of $1,740.43, which reflected the $1,443.42 remaining balance, plus court costs and interest. (Doc. 15-3, at 30). NCS ultimately collected on the judgment from plaintiffs' Wells Fargo Bank account and filed a Satisfaction of Judgment. (Docs. 15-2, at 5-6; 15-3, at 31-38). Plaintiffs takes issue with various aspects of defendants' actions on the execution on the default judgment (Docs. 13-1, at 5-6; 13-2, at 14; 20, at 9-10), but plaintiffs' allegations are not material to the parties' motions for summary judgment.

### III. PROCEDURAL HISTORY

Plaintiffs allege that defendants violated three subsections of the Fair Debt Collection Practices Act ("FDCPA"), Title 15, United States Code, Section 1692 et seq. Count I alleges that defendants violated Section 1692g(a) because they did not send a new validation notice after plaintiffs made payments to NCS on plaintiffs' debt to the Boys and Girls Home and before defendants filed the small claims action. (Docs. 1, at 3-5; 13-1, at 8-11).

In Count II, plaintiffs allege that defendants used false, deceptive, or misleading representations or means in connection with collecting the remaining balance in violation of FDCPA Section 1692e(10). (Doc. 1, at 5-6).

Count III alleges that by serving plaintiffs with the small claims petition defendants violated Section 1692e(11), which requires that a debt collector make certain disclosures in the initial communication. (Docs. 1, at 6-7; 13-1, at 14-15).

In Count IV, plaintiffs claim that defendants violated the Iowa Debt Collection Practices Act ("IDCPA"). Specifically, plaintiffs allege that defendants violated Section 537.7103(4)(h)[5] (Docs. 1, at 7; 13-1, at 15-16), which prohibits a debt collector from making a "representation that an existing obligation of the debtor may be increased by the addition of attorney's fees, investigation fees, service fees or other fees or charges, when in fact such fees or charges may not legally be added to the existing obligation."

Plaintiffs moved for summary judgment on Counts I-IV and stated they are no longer pursuing Counts V and VI.[6] (Doc. 13-1, at 17-18). Defendants resisted plaintiffs' Motion for Summary Judgment (Doc. 14) and cross-moved for summary judgment (Doc. 15). Plaintiffs resisted defendants' Motion for Summary Judgment. (Doc. 17).

## IV. ANALYSIS

### A. Debt Collector

The FDCPA applies to "debt collectors." *See* 15 U.S.C. § 1692. There is no dispute that NCS is a debt collector, but the parties dispute whether DeckLaw is a debt collector. (Docs. 13-1, at 2; 14-2, at 1). The plaintiff has the burden to prove that the defendant is a debt collector. *Lynch v. Custom Welding & Repair, Inc.*, 142 F. Supp. 3d 814, 818 (N.D. Iowa 2015). The FDCPA defines a debt collector, subject to exceptions not applicable here, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This Court has explained that the FDCPA:

---

[5] Plaintiffs mistakenly refer to Iowa Code Section 537.7103(4)(f) in their brief, but the content of plaintiffs' brief makes clear that plaintiffs are alleging a violation of subsection (4)(h).

[6] Counts V and VI assert claims under the IDCPA.

establishes two alternative tests for considering whether a defendant is a debt collector: (1) the "principal purpose" test, which applies if the defendant "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts;" and (2) the "regularly collects" test, which applies if the defendant "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

*Lynch*, 142 F. Supp. 3d. at 818 (quoting 15 U.S.C. § 1692a(6)). Plaintiffs only argue that DeckLaw is a debt collector under the "regularly collects" test. (Docs. 13-1, at 6-8; 17-1, at 1-2).

Defendants assert that the Court should use the framework adopted by the Second Circuit Court of Appeals in *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62-63 (2d Cir. 2004), to determine if DeckLaw is a debt collector under the "regularly collects" test. In *Goldstein*, the Second Circuit Court of Appeals held that "the question of whether a lawyer or law firm 'regularly' engages in debt collection activity within the meaning of [S]ection 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." *Id*. The court then listed the following non-exhaustive list of factors bearing on the issue of regularity:

(1) [T]he absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations. Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest

regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Id.* at 61-62. This Court has previously utilized the *Goldstein* analysis to determine if a defendant regularly engaged in debt collection. *Lynch*, 142 F. Supp. 3d at 821-22.

Plaintiffs do not explicitly support or dispute that the *Goldstein* analysis should apply, but the Court can infer from the authority cited by plaintiffs that they agree that *Goldstein* should apply. Specifically, plaintiffs cite *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013), for the definition of "regular," in the "regularly conducts" test. (Doc 13-1, at 7). In *James*, the Tenth Circuit Court of Appeals adopted the *Goldstein* analysis. *See* 723 F.3d at 1318 ("We agree with and adopt the standard set forth by the Second Circuit in *Goldstein.*"). Thus, the Court finds that there is no dispute between the parties and as a matter of law it is appropriate to analyze whether DeckLaw is a debt collector under the *Goldstein* analysis.

DeckLaw has the burden on its motion for summary judgment to establish that there is no genuine issue of material fact that it is not a debt collector. *Hartnagel*, 953 F.2d at 395. Defendants have established that there is no genuine issue of material fact as to some of the *Goldstein* factors that weigh against DeckLaw being a debt collector. For instance, DeckLaw has no personnel specifically designed to work on debt collection matters, has no systems or contractors in place to facilitate debt collection activity, and does not advertise itself as conducting or assisting in debt collection activity. (Doc. 15-3, at 8).[7] DeckLaw, however, does not offer any facts to establish several other relevant

---

[7] Plaintiffs attempt to refute the facts in Jessica Noll's affidavit about DeckLaw's debt collection activities, but in support only cite the percentage of DeckLaw's gross income derived from debt collection work and the fact that Ms. Noll is on the board of NCS. (Doc. 20, at 6). Even viewing the facts in the light most favorable to plaintiffs, neither of the facts cited by plaintiffs creates any dispute as to whether DeckLaw has personnel specifically designed to work on debt

factors. DeckLaw has not established the total number of debt collection notices it sent or the number of debt collection cases it filed in 2017 or 2018. Similarly, DeckLaw has not established the frequency of such communications or litigation activity.

Drawing all inferences in plaintiffs' favor, the record establishes the presence of other factors that weigh in favor of DeckLaw being a debt collector. First, DeckLaw has represented multiple debt collectors and has an ongoing relationship with at least one debt collector, NCS. (*Id.*). Although DeckLaw does not have a written contract with NCS, Ms. Noll concedes that NCS hires her, "on a regular basis." (Doc. 13-2, at 30). Likewise, the fact that Ms. Noll is a board member of NCS (Doc. 15-3, at 8) reasonably indicates an ongoing relationship between DeckLaw and NCS. Thus, for purposes of defendants' Motion for Summary Judgment, the ongoing relationship between NCS and DeckLaw weighs in favor of DeckLaw being a debt collector.

Second, although there is some dispute between the parties about the role that debt collection plays in DeckLaw's practice, this factor ultimately weights in favor of DeckLaw being a debt collector under the FDCPA. In *Goldstein*, the court noted that the percentage of a firm's revenue derived from debt collection is relevant to the extent it bears upon the regularity that the firm engages in debt collection activity. 374 F.3d at 62-63. The court cautioned, however, that too much reliance on the percentage of revenues may conflate the "primary purpose" and "regularly collects" tests. *Id.* at 61. The court commented that one percent of overall revenue for a large firm may constitute regular debt collection work, whereas one percent of a small practice may not. *Id.* at 63. In 2017, debt collection work comprised $23,000 of DeckLaw's gross income of $414,000 (5.56%). (Doc. 15-3, at 7-8). In 2018, debt collection work made up $19,814 of DeckLaw's gross income of $297,199.44 (6.67%). (*Id.*). Ms. Noll states in her

collection matters, has systems or contractors in place to facilitate debt collection activity, or advertises itself as conducting or assisting in debt collection activity.

affidavit that debt collection "is a small portion of [DeckLaw's] business." (Doc. 15-3, at 8). Ms. Noll's statement, however, is not a statement of fact; rather, it is a vague characterization of the role debt collection plays in DeckLaw's practice.

In *Kaiser v. Braje & Nelson, LLP*, No. 3:04-CV-405 RM, 2006 WL 1285143, at *3 (N.D. Ind. May 5, 2006), the court found that the defendant law firm was a debt collector when, among other things, debt collection accounted for about seven percent of the firm's overall business and the firm filed numerous collection actions on behalf of a single client. This is similar to the 5.56% and 6.67% of revenue that debt collection constituted for DeckLaw in 2017 and 2018 respectively, combined with DeckLaw's frequent representation of NCS.

From the other facts in the record a jury could likewise find that DeckLaw's debt-collection revenue was the result of relatively numerous or frequent debt collection matters. DeckLaw filed the small claims action to recover the remaining balance of $1,443.42. (Doc. 15-3, at 23). DeckLaw performs some routine legal work related to debt collection for NCS on a fixed fee rather than hourly basis. (Doc. 13-2, at 30). Viewing these facts in the light most favorable to plaintiffs, a jury could infer that DeckLaw engages in a relatively high number of debt collection matters and charges smaller fixed fees to make legal action feasible in light of the amounts owed. Thus, debt collection revenues of approximately $20,000 each year could reasonably be the result of frequent debt collection activity generating a small amount of fees in each instance. For purposes of defendants' Motion for Summary Judgment, this factor weighs in favor DeckLaw being a debt collector under the FDCPA.

Defendants have not met their burden at the summary judgment stage to establish that there is no genuine issue of material fact as to whether DeckLaw is a debt collector under the *Goldstein* analysis. Although the factors about debt collection systems, contractors, and advertising weigh in DeckLaw's favor, DeckLaw's ongoing relationship

with NCS, representation of other debt collectors, and the portion of DeckLaw's revenues derived from debt collection weigh in favor of DeckLaw being a debt collector under the FDCPA. Additionally, DeckLaw did not present any evidence of the amount or frequency of its debt collection communications or filings. Drawing all inferences in plaintiffs' favor, the Court cannot determine, as a matter of law, that DeckLaw is not a debt collector. Thus, the Court will assume for purposes of defendants' Motion for Summary Judgment that DeckLaw is a debt collector under the FDCPA.

### B. *Violation of 15 U.S.C. § 1692g(a)*

Count I of plaintiffs' complaint (Doc. 1, at 5) alleges that defendants violated Section 1692g(a) of the FDCPA. Section 1692g(a) requires that a debt collector provide the debtor either the "initial communication" or, within five days thereafter, a written validation notice containing:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Plaintiffs assert "[t]he only communication to [plaintiffs] preceding the filing of the [small claims action] was the service of the small claim petition." (Doc. 13-1, at 9). Plaintiffs allege that they did not receive either the Notice of Right to Cure Default or the verifications of account. (*Id.*). Finally, plaintiffs assert

that DeckLaw did not send a new validation notice after plaintiffs made payments on the debt. (*Id.*, at 10).

Defendants argue that they did not violate Section 1692g(a) because NCS's September 23, 2014 letter to plaintiffs was both the initial communication and validation notice. (Doc. 14-1, at 9). In the alternative, defendants argue that if plaintiffs did not receive either the September 23, 2014 letter, or the May 1, 2017 Notice of Right to Cure Default, then defendants could not have violated Section 1692g(a) because the small claims petition was not an "initial communication." (*Id.*, at 9-10).[8] In the absence of an initial communication, defendants argue they had no duty to provide a validation notice.

Drawing all inferences in plaintiffs' favor, there is no genuine issue of material fact that plaintiffs received the September 23, 2014 letter from NCS. (Docs. 1, at 3; 20, at 1-2). There is also no dispute that the September 23, 2014 letter contained all the information required to be included in a validation notice. (*Compare* Docs. 15-3, at 11; 20, at 2, *with* 15 U.S.C. § 1692g(a)). Under Section 1692g(a) there is only one "initial communication" for a particular debt. *See Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1222 (W.D. Wash. 2011) ("By using the singular when referring to 'initial communication,' Congress contemplated only one initial communication with a debtor on a given debt."); *see also Adams v. Homeward Residential, Inc.*, Civil Action 13-0329-WS-B, 2014 WL 460936, at *3 (S.D. Ala. Feb. 5, 2014) ("Following that initial communication and validation notice, subsequent communications with a debtor need not reiterate the validation notice provisions of § 1692g(a).").

Also, NCS was not required under the FDCPA to send plaintiffs any notice before initiating the small claims action. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore,*

---

[8] Although DeckLaw, not NCS, filed and arranged for service of the small claims petition, a debt collector can be vicariously liable for FDCPA violations by its attorney. *Scott v. Portfolio Recovery Assocs., LLC*, 139 F. Supp. 3d 956, 965 (S.D. Iowa 2015).

*LLC*, 480 F.3d 470, 473 (7th Cir. 2007) ("[L]egal pleadings no longer need be preceded or accompanied by verification notices."). Because NCS satisfied its obligations under Section 1692g(a) in the September 23, 2014 validation notice, the fact that plaintiffs did not receive the Notice of Right to Cure Default before NCS filed the small claims action does not constitute a violation of Section 1692g(a).

Plaintiffs argue that because they made payments on the debt, NCS was required to send a new validation notice as to the remaining balance. (Doc. 17-1, at 2). Plaintiffs cite no authority to support the proposition that a creditor is required to send a new initial communication or validation notice when a debtor makes a payment on the debt, and the Court will not craft plaintiffs' argument for them. *See Pharm. Care Mgmt. Ass'n v. Tufte*, 297 F. Supp. 3d 964, 986 (D.N.D. 2017); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Plaintiffs' argument is also unsupported by the plain language of Section 1692g(a), which refers to a singular validation notice on a debt. As a matter of law NCS's September 23, 2014 letter served as both the initial communication and validation notice and satisfied NCS's obligations under Section 1692g(a). Thus, NCS is entitled judgment on plaintiffs' claim as a matter of law.

Turning to DeckLaw, the fact that the small claims petition did not contain, or was not followed within five days by, the information set forth in Section 1692g(a) does not constitute a violation of the FDCPA. Section 1692g(d) states "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." Because the small claims petition was not an "initial communication," the requirements of Section 1692g(a) do not apply, and plaintiffs' claim fails as a matter of law.

The fact that plaintiffs did not receive the verifications of account filed by DeckLaw on behalf of NCS also does not violate Section 1692g(a) because verifications of accounts are formal pleadings. Plaintiffs admit that a verification of account is "a court form utilized to verify identifying information to the court," and that defendants were not required to mail plaintiffs the verifications of account. (Doc. 20, at 5). The verifications of account in this case are filled-out versions of a form promulgated by the Iowa Supreme Court. *See* IOWA CODE § 631.15 ("The supreme court shall prescribe standard forms of pleadings to be used in small claims actions."); IOWA R. PRAC. & PROC. Form 3.27 (2017). The Court finds that the verifications of account are not "initial communications" within the meaning of Section 1692g(a) because they are a formal pleading. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 87–88 (2d Cir. 2018) (holding that "certificate of merit" and "request for judicial intervention" that were required by New York law to be filed with a foreclosure complaint were "formal pleadings" under 15 U.S.C. § 1693g(d), and thus were exempt from the initial communication requirements of 15 U.S.C. § 1693g(a)).

Finally, plaintiffs claim that DeckLaw, as a new debt collector separate from NCS, was required to send plaintiffs an initial communication and validation. (Doc. 1, at 4). There is a well-recognized split of authority among courts about "whether an 'initial communication' under § 1692g(a) includes a subsequent debt collector's first 'communication' with a debtor, when a prior debt collector has already communicated with that debtor on a given debt and satisfied the statutory notice requirements." *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D. Md. 2005); *see also Judd v. Credit Control, LLC*, Case No. 4:15-CV-1797 (CEJ), 2016 WL 213038, at *2 (E.D. Mo. Jan. 19, 2016) ("Courts are split on whether § 1692g applies to initial communications from each successive debt collector." (citations omitted)). The Court, however, need not resolve this split of authority for two reasons. First, there was no "initial communication"

between DeckLaw and plaintiffs, and thus DeckLaw had no obligation to provide a validation notice under Section 1692g(a). Second, even though DeckLaw was a subsequent debt collector, there is no requirement under the FDCPA that any debt collector, initial or subsequent, send an initial communication to a debtor before filing suit. *Beler*, 480 F.3d at 473.

The Court finds as a matter of law that defendants did not violate Section 1692g(a). Defendants' Motion for Summary Judgment is **granted as to Count I**. Because plaintiffs' Motion for Summary Judgment is based on the same legal theories identified in defendants' motion, and because plaintiffs' claims fail as a matter of law even with all factual inferences drawn in their favor, plaintiffs' Motion for Summary Judgment is **denied as to Count I**.

### C.     *Violations of 15 U.S.C. § 1692e(10)*

The FDCPA generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and provides a non-exhaustive list of examples of such practices. 15 U.S.C. § 1692e. Plaintiffs allege that defendants violated Section 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiffs claim that both defendants violated Section 1692e(10) by failing to send plaintiffs a validation notice before filing the small claims petition and by rejecting the check mailed on January 23, 2018, marked "paid in full." (Doc. 13-1, at 11-13). Plaintiffs also claim that DeckLaw violated Section 1692e(10) because its recordkeeping practices did not permit it to answer plaintiffs' interrogatory asking "what percentage of each kind of different areas of law make[ ] up the total income of DeckLaw [ ]?" (Docs. 13-1, at 13-14; 13-2, at 29). Plaintiffs allege that DeckLaw's record keeping practices violate the Iowa Rules of Professional Conduct,

and the only purpose for DeckLaw's record keeping practices is to avoid being considered a debt collector for purposes of the FDCPA. (Doc. 13-1, at 14).

### 1. *Claims against Both NCS and DeckLaw*

Plaintiffs' claims against both NCS and DeckLaw under Section 1692e(10) fail as a matter of law. As the Court found above, NCS sent, and plaintiffs received, an initial communication and validation notice dated September 23, 2014. Neither defendant was required to send a second validation notice before filing the small claims action. Thus, plaintiffs' claim that defendants violated Section 1692e(10) by failing to send a validation notice to plaintiffs' correct address fails as a matter of law.

As to plaintiffs' claim regarding the rejection of the check, the Court found that NCS did not receive the check for $1,443.42 and marked "paid in full" until after the entry of the default judgment. After the state court entered the default judgment, NCS was entitled to the remaining balance of $1,443.42 as well as court costs ($286.71) and interest. (Doc.15-3, at 27-30). Had NCS deposited plaintiffs' check, NCS would not have been able to collect the court costs or interest the state court awarded in the default judgment. *See* IOWA CODE § 554.3311 (containing Iowa's rules on accord and satisfaction). Plaintiffs cite no authority to support their argument that the FDCPA required NCS to accept less than the amount of the default judgment, which included court costs and interest. *See McCammon v. Bibler, Newman & Reynolds, P.A.*, 515 F. Supp. 2d 1220, 1227-28 (D. Kan. 2007) (holding that debt collector did not misrepresent amount of debt by adding court costs and interest imposed in default judgment to amount of debt). The Court finds as a matter of law that NCS did not engage in a "false representation or deceptive means" by declining to accept less than the amount ordered by the court.

Plaintiffs' claims that DeckLaw violated Section 1692e(10) by rejecting the check marked "paid in full" and by not notifying plaintiffs about why they were rejecting the

check likewise fail as a matter of law. As to the rejection of the check, DeckLaw had no authority to accept the check, which represented a proposed accord and satisfaction, without NCS's consent. *See* IOWA R. PROF'L. CONDUCT 32:1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."). NCS declined to accept the check without plaintiffs also paying the court costs ordered in the small claims action. DeckLaw did not engage in a false or deceptive practice by honoring its client's wishes about plaintiffs' proposed accord and satisfaction.

DeckLaw likewise did not violate Section 1692e(10) by not advising plaintiffs why the check was rejected. In determining whether a communication by a debt collector is false, deceptive, or misleading under the FDCPA, courts employ a "least sophisticated" or "unsophisticated" consumer test. *Haney v. Portfolio Recovery Assocs., L.L.C.*, 895 F.3d 974, 981 (8th Cir. 2016). Under this test, a communication is viewed through the eyes of an unsophisticated consumer to determine if it is false, deceptive, or misleading. *Klein v. Credico Inc.*, 922 F.3d 393, 396 (8th Cir. 2019). Plaintiffs' claim against DeckLaw relates to a lack of communication, but the Court finds that the same principles apply.

There is no dispute that Ms. Noll, the attorney for DeckLaw, never had any personal contact with plaintiffs. (Doc. 20, at 10). The small claims petition stated DeckLaw was acting on behalf of NCS. (Doc. 15-3, at 23-24). It is irrelevant that DeckLaw did not advise plaintiffs about why the check was rejected because Mr. Wells spoke directly with Mr. Noll, who told Mr. Wells that NCS rejected the check because it did not include court costs and interest. (Doc. 15-3, at 5). Given that Mr. Wells was explicitly told why NCS rejected the check, even the least sophisticated consumer would understand that DeckLaw rejected the check for the same reasons as NCS. Thus, plaintiffs' Section 1692e(10) claims asserted against both defendants fail as a matter of law.

## 2. *Claim Against DeckLaw Only*

Plaintiffs claim that DeckLaw's recordkeeping practices violate Section 1692e(10) because they are intended to prevent the FDCPA from applying to DeckLaw. Plaintiffs' claim fails for three reasons. First, plaintiffs' complaint contains no factual information about DeckLaw's recordkeeping practices. (Doc. 1). Federal Rule of Civil Procedure 8 requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To state a claim for relief a complaint must contain sufficient factual information to set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply put, the complaint contains no facts to support plaintiffs' allegations about DeckLaw's recordkeeping practices set forth in plaintiffs' Motion for Summary Judgment. (Doc. 13-1, at 13-14). Thus, plaintiffs' purported claim against DeckLaw fails as a matter of law, and DeckLaw is entitled to summary judgment on it.

Second, even if plaintiffs asserted facts about DeckLaw's recordkeeping practices in the complaint, plaintiffs' claim would still fail. Section 1692e governs "false, deceptive, or misleading representation or means in connection with the collection of any debt." As defendants point out, plaintiffs cite no law to support their assertion that DeckLaw's recordkeeping practices are a representation or means under the FDCPA. (Docs. 13-1, at 13-14; 15-1, at 13). "Representation" and "means" are not defined under the FDCPA. *See* 15 U.S.C. 1692a. In the absence of a statutory definition, courts give statutory terms their ordinary dictionary meaning. *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 863 F.3d 816, 825 (8th Cir. 2017) (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012)) (subsequent case history omitted). A "representation" is defined in relevant part as "[a] presentation of fact — either by words or by conduct — made to induce someone to act." *Representation*, BLACK'S LAW DICTIONARY (11th ed.

2019). A "means" is defined as "[s]omething that helps to attain an end; an instrument; a cause." *Means*, BLACK'S LAW DICTIONARY (11th ed. 2019).

DeckLaw's recordkeeping practices are neither a representation nor a means used in connection with the collection of a debt. At no point in DeckLaw's efforts to collect the remaining balance, which was limited to the small claims action, did DeckLaw make any representation to plaintiffs or anyone else about what percentage of its legal work related to debt collections. Also, there is nothing in the factual record to indicate that DeckLaw used its recordkeeping practices as an instrument to attain the goal of collecting the remaining balance. Based on the plain language of Section 1692e, DeckLaw's method of tracking its clients and matters are not representations or means within the meaning of the FDCPA, and thus DeckLaw's recordkeeping practices cannot have violated Section 1692e as a matter of law.

Third, plaintiffs' claim against DeckLaw also fails because it lacks any factual support as to DeckLaw's motive for its method of tracking its clients and matters. The Iowa Rules of Professional Conduct give lawyers wide latitude to adopt appropriate measures for tracking clients and matters to detect potential conflicts of interest. *See* IOWA R. PROF'L CONDUCT 32:1.7 cmt. 3 ("To determine whether a conflict of interest exists, a lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues involved."). Contrary to plaintiffs' assertion (Doc. 13-1, at 13), nothing in the Iowa Rules of Professional Conduct requires DeckLaw to track its cases by case type. Plaintiffs assert "[t]he only reason to not keep such a list is so that [DeckLaw] cannot be proved to be a debt collector." (*Id.*, at 14). Plaintiffs make no citation to the record in support of their allegation. (*Id.*). Again, for purposes of ruling on defendants' Motion for Summary Judgment the Court will draw all inferences from the record in plaintiffs' favor, but the Court will not accept speculation as fact. *Gilani* 843 F.3d at 349 (citation

omitted).  There is no evidence in the record from which the Court could conclude that DeckLaw adopted its recordkeeping practices to avoid being governed by the FDCPA, and thus there is no evidence that DeckLaw's practices are false, deceptive, or misleading under the FDCPA.  The Court finds that there is no genuine issue of material fact, and DeckLaw is entitled to judgment as a matter of law on plaintiffs' claim about DeckLaw's recordkeeping practices.  Defendants' Motion for Summary Judgment is **granted as to Count II**.  Again, because defendants' motion is premised on the same legal theories as plaintiffs' Motion for Summary Judgment, plaintiffs' motion is **denied as to Count II**.

### D.    *Violation of 15 U.S.C. § 1692e(11)*

Plaintiffs claim that defendants violated Section 1692e(11) of the FDCPA because the small claims petition served on plaintiffs was an initial communication that did not include the required disclosures.    (Docs. 1, at 6; 13-1, at 14-15).    An initial communication, either oral or written, must state "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and all subsequent communications must disclose that the communication is from a debt collector.  15 U.S.C § 1692e(11).  Section 1692e(11) goes on to state that its disclosure requirements "shall not apply to a formal pleading made in connection with a legal action."  As the Court found above, the small claims petition was a formal pleading in a legal action. Thus, defendants could not, as a matter of law, have violated Section 1692e(11) by omitting information from the small claims petition.  Plaintiffs' claim under Section 1692e(11) fails as a matter of law, and defendants' Motion for Summary Judgment is **granted as to Count III**.   Plaintiffs' Motion for Summary Judgment is **denied as to Count III**.

### E.    *IDCPA Claims*

The only basis for the Court to have jurisdiction over plaintiffs' IDCPA state-law claims is pendant jurisdiction under Title 28, United States Code, Section 1367(a).  "A

federal district court has discretion to decline jurisdiction if it has 'dismissed all claims over which it has original jurisdiction.'" *Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Having granted defendants' Motion for Summary Judgment on each of plaintiffs' FDCPA claims, the Court declines to exercise pendant jurisdiction over plaintiffs' IDCPA claims. This Court has noted that "the statutory scheme enacted by the IDCPA differs in many ways from that created by the FDCPA," including different definitions of "debt collector." *Lynch*, 142 F. Supp. 3d at 823. Thus, ruling on the parties' cross motions for summary judgment "will require a detailed analysis of Iowa statutes and case law." *Id.* There is a recognized "dearth of case law interpreting the IDCPA." *Scott*, 139 F. Supp. 3d at 973. The parties include no argument in their briefs as to whether DeckLaw is a debt collector under the IDCPA. In light of the differences between the IDCPA and the FDCPA, the lack of guidance from Iowa courts on how to interpret the IDCPA, and the parties' lack of argument addressing the IDCPA, plaintiffs' state-law claims are best left to Iowa state courts. **Counts IV-VI are dismissed without prejudice**. The parties' motions for summary judgment are **denied as moot as to Counts IV-VI**.

## V.    CONCLUSION

For the aforementioned reasons, defendants' Motion for Summary Judgment (Doc. 15) is **granted as to Counts I-III** and **denied as moot as to Counts IV-VI**. Plaintiffs' Motion for Summary Judgment (Doc. 13) is **denied as to Counts I-III** and **denied as moot as to Counts IV-VI**. The Court declines to exercise jurisdiction over Counts IV-

VI and **Counts IV-VI are dismissed without prejudice**. The Clerk of Court is **directed to enter judgment in favor of defendants**.

      **IT IS SO ORDERED** this 30th day of October, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa